UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| GARY DOLE,<br><br>    Plaintiff,<br><br> vs.<br><br>NANCY BERRYHILL, Acting Commissioner, Social Security Administration,<br><br>    Defendant. | 5:18-CV-05008-DW<br><br>ORDER |

## INTRODUCTION

On January 29, 2018, claimant Gary Dole filed a complaint appearing the final decision of Nancy A. Berryhill, the acting Commissioner of the Social Security Administration, finding him not disabled. (Doc. 1). Defendant denies claimant is entitled to benefits. (Doc. 7). The court issued a briefing schedule requiring the parties to file a joint statement of materials facts ("JSMF"). (Doc. 9). For the reasons stated below, claimant's motion to reverse the decision of the Commissioner (Doc. 13) is denied.

## FACTS AND PROCEDURAL HISTORY

The parties' JSMF (Docket 10) is incorporated by reference. Further recitation of the salient facts is incorporated in the discussion section of this order.

1

On March 15, 2015, Mr. Dole filed an application for Social Security disability benefits alleging an onset of disability date of April 1, 2014. (Doc. 10 at ¶ 1). The claims were denied initially and on reconsideration, and Mr. Dole filed a written request for a hearing. (Id.). An evidentiary hearing was held on December 2, 2016. (Id. at ¶ 2). On February 15, 2017, the ALJ issued a written decision denying benefits. (Id. at ¶ 3; see also AR p. 13–23).[1] Mr. Dole subsequently sought appellate review; his request was denied, making the decision of the ALJ final. (Id. at ¶ 3). It is from this decision that Mr. Dole timely appeals.

The issue before this court is whether the ALJ's decision of February 15, 2017, that Mr. Dole was not "under a disability, as defined in the Social Security Act, from April 1, 2014, through [February 15, 2017]" is supported by substantial evidence on the record as a whole. (AR at p. 23); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v.

---

[1] The court will cite to information in the administrative record as "AR at p. ___."

Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 901 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision "'merely because substantial evidence would have supported an opposite decision.'" Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation

does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) Whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment – one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143–44 (8th Cir. 1998); see also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 15–23). At step three of the evaluation, the ALJ found that Mr. Dole does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found Mr. Dole is unable to perform past work; however, at step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Mr. Dole can perform. Thus, the ALJ found that Mr. Dole is not disabled. (AR at p. 23).

## DISCUSSION

Mr. Dole identifies the following issues: (1) whether Mr. Dole meets Social Security listing 104A; (2) whether treating Doctor Trevor Anderson's opinions

4

regarding Mr. Dole's condition should have been accepted; (3) whether Mr. Dole's credibility should have been accepted; and (4) whether the case should be reversed and remanded for calculation of benefits. The court will discuss each issue in turn.

### **STEP ONE**

At step one, the ALJ determined claimant "had not [been] engaged in substantial gainful activity since April 1, 2014, the alleged onset date" of disability. (AR at p. 15).

### **STEP TWO**

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707.

Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities.

The ALJ found Mr. Dole suffered from the following severe impairment: degenerative disc disease of the cervical spine. (AR at p. 15).

**STEP THREE**

At step three, the ALJ must determine whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirements of 20 CFR § 404.1509, the claimant is considered disabled. A claimant has the burden to show that his impairment meets all of the listing's specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present *medical findings* equal in severity to all the criteria for the one most similar listed impairment." Id. at 531 (emphasis added).

The ALJ determined that, although Mr. Dole "does have degenerative disc disease in the cervical area of his spine, imaging studies failed to reveal any evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis sufficient to satisfy [the elements of Listing 104.]" (AR at p. 17).

6

Therefore, the ALJ found Mr. Dole did not have the gravity of symptoms nor medical documentation to establish an impairment of listing level severity. (Id.). Mr. Dole challenges the ALJ's finding of no nerve compression, stating that the February 2016 MRI shows abutment of the exiting C4 nerve root, and evidence of nerve root compression lasting for more than twelve months is further shown by findings of neuroanatomic distribution of pain, limited motion of the spine, and motor loss. (Doc. 13 at p. 3; Doc. 17 at p. 4–6).

The qualifications for Listing 1.04 are as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 CFR Pt. 404, Subpt. P, Appx. 1, § 1.04. The physical impairments considered under Listing 1.04 must be in existence for a continuous period of at least twelve months. 20 CFR § 404.1509.

Mr. Dole points to medical records showing limitations on his range of motion and motor functions, pain distribution, 2014 MRI results revealing "nerve impingement," and 2016 MRI results showing nerve abutment. (Doc. 17 at p. 4; see Doc. 10 at ¶ 5). However, the issue "is not whether substantial evidence exists to reverse the ALJ." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Rather, the court asks "whether substantial evidence supports the ALJ's decision." Id. Here, substantial evidence supports the ALJ's decision that Mr. Dole does not meet Listing 1.04's requirements.

Mr. Dole underwent an MRI of the cervical spine on April 1, 2014, which showed leftward nerve impingement. (Doc. 10 at ¶ 5). On April 3, 2014, Dr. Watt noted Mr. Dole had full range of motion in cervical spine and upper and lower extremities, straight-leg raises were negative, motor skills were intact, and he was ambulate on heels and toes without difficulty. (Id.).

Dr. Watt performed neck surgery on May 15, 2014. (Id. at ¶ 20). The day after the surgery, Mr. Dole reported the numbness and tingling in his arms had disappeared. (Id.). In late May 2014, Mr. Dole's physical therapist, Mr. Bonar, noted Mr. Dole had significant loss of cervical spine range of motion and loss of rotation in the left shoulder, although Mr. Dole's pain had improved since his surgery. (Id. at ¶ 21).

In June 2014, Mr. Bonar noted improved mobility of the upper segments of the spine. (Id. at ¶¶ 23–25). That same month, Dr. Watt noted muscle stiffness but no objective neurologic deficits. (Id. at ¶ 27).

In July 2014, a cervical spine x-ray showed good alignment, good hardware and graft position, and no abnormal motion across, above, or below the fusion. (Id. at ¶ 30).

In September 2014, Dr. Watt ordered a cervical spine MRI which showed good alignment, nicely-healing fusion, and no abnormal motion. (Id. at ¶ 35). That same month, chiropractor Dr. Nicholas Krysl noted Mr. Dole demonstrated improved range of motion following treatment. (Id. at ¶ 39).

In October 2014, Dr. Watt noted Mr. Dole appeared uncomfortable, with limited range of motion secondary to discomfort, but that Mr. Dole did not have any radicular symptoms or objective deficits in his arms or legs. (Id. at ¶ 41). A lateral flexion/extension x-ray of Mr. Dole's cervical spine showed good alignment, fairly well-preserved lordosis, nicely-maturing bone, and that the hardware and graft were in good position. (Id.). Dr. Watt also noted in October 2014 that the September 2014 MRI did not show anything that looked like a surgical problem, and recommended continued physical therapy, chiropractic treatment, and massage. (Id.). Throughout October 2014, Dr. Krysl, Dr. Trevor Anderson, and Dr. Watt noted improvements in range of motion and pain. (Id. at ¶¶ 41–52).

In November 2014, Mr. Dole periodically reported increased soreness, stiffness, and limited range of motion after doing "heavy lifting" (piling wood), snowblading, and driving in bad weather. (Id. at ¶¶ 53—58).

In December 2014, Dr. Anderson released Mr. Dole to work six hours per day, up to five days a week, lifting no more than ten pounds and with no overhead use of the upper extremities. (Id. at ¶ 59).

In January 2015, physical therapist Myron Sorestad performed a physical exam and concluded Mr. Dole could perform medium-level work for an eight-hour day. (Id. at ¶ 63).

In February 2015, Dr. Anderson performed a physical exam which showed "severe loss of range of motion in the neck. [Mr. Dole could] flex and extend approximately 15 degrees and only [had] about 30 degrees of rotation bilaterally." (Id. at ¶ 66). Dr. Anderson noted strength through the bilateral upper extremities was only minimally decreased. (Id.). Dr. Anderson maintained the same work restriction that he provided in November 2014. (Id. at ¶ 67).

In May 2015, Dr. Anderson did a physical examination which showed severe loss of range of motion in the neck, and some tenderness in the paraspinal muscles. (Id. at ¶ 70). Dr. Anderson limited Mr. Dole's lifting to no more than 50 pounds occasionally and 20 pounds frequently, and limited bending/twisting to occasionally. (Id. at ¶ 71).

In September 2015, Dr. Anderson noted Mr. Dole had been obtaining massages and chiropractic care, both of which seemed to be helping. (Id. at ¶ 80).

On February 3, 2016, Mr. Dole obtained another MRI of the cervical spine. (Id. at ¶ 85). The MRI showed a shallow disc protrusion at C3-4 with

"mild to moderate left foraminal narrowing secondary to uncinated process hypertrophy" and "abutment of the exiting left C4 nerve root." (Id.). At C4-5, the MRI showed a disk-osteophyte complex resulting in borderline mild central canal stenosis without cord compression, with mild right foraminal narrowing. (Id.). The MRI also showed mild right foraminal narrowing at C5-6. (Id.). When compared with the September 2014 MRI, this study showed there had been no significant interval change in the cervical spine appearance. (Id.). Dr. Anderson reviewed the February 2016 MRI in March 2016, and concluded it showed no significant changes. (Id. at ¶ 86).

In October 2016, neurosurgeon Dr. Henk Klopper saw Mr. Dole for a surgical evaluation. (Id. at ¶ 92). Dr. Klopper's physical examination showed no pain with active movement; limited range of motion in flexion, extension, and rotation; 5/5 strength through upper and lower extremities; symmetric deep tendon reflexes; and negative Hoffmann's and Lhermitte's signs. (Id.). Dr. Klopper reviewed the MRI, which showed no ongoing spinal cord compression, no signal change in the spinal cord, and mild foraminal stenosis at C5-6. (Id.). Dr. Klopper recommended a CT scan, which was conducted on October 26, 2016. (Id. at ¶ 93). The CT scan showed "no neurally compressive lesion at surgical levels," "no neurally compressive lesion throughout remainder of cervical spine," and "appearance of spine per CT is compatible with appearance of spine per 9/1/16 MRI; end plate erosions more conspicuous per CT." (Id.).

The ALJ found that Mr. Dole's imaging studies did not show levels of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis sufficient to satisfy the requirements of Listing 1.04. (AR at p. 17). The medical evidence summarized above shows that although Mr. Dole suffered from some nerve impingement, mild foraminal stenosis, and periodic limited range of motion, he also experienced consistent improvement, good muscle strength, no reflex loss, and no motor loss. The ALJ found later that the majority of the diagnostic evidence indicated only mild level findings, and the court finds this conclusion is supported by the record. (AR at p. 21).

Furthermore, medical records show that Mr. Dole suffered from increased pain and limited range of motion sporadically, rather than for the required twelve-month period. Although Mr. Dole complained of intense pain, treating doctors observed multiple times that Mr. Dole did not appear to be in pain. The ALJ did not find Mr. Dole's statements concerning the effects of his symptoms credible when evaluated against objective medical evidence. (AR at p. 21). The court likewise does not find Mr. Dole's statements regarding his pain levels credible when compared to objective medical evidence. For these reasons, the court finds substantial evidence supports the ALJ's decision. Vossen, 612 F.3d at 1015. Mr. Dole's objection to step three is overruled.

**STEP FOUR**

Before considering step four of the evaluation process, the ALJ must determine a claimant's residual functioning capacity ("RFC"). 20 CFR §§ 404.1520(a)(4)(iv) & 404.1545. RFC is a claimant's ability to do physical and

mental work activities on a sustained basis despite any limitations from his impairments.  20 CFR § 404.1545(a)(1).  In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe.  20 CFR § 404.1545(e).  All of the relevant medical and non-medical evidence in the record must be considered.  20 CFR § 404.1513.

In determining a claimant's RFC, the ALJ considers any medical opinions and claimant's degree of functional limitation.  20 CFR § 404.1545(a)(1), (4).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis, and prognosis, and what [claimant] can still do despite the impairment(s), and . . . physical or mental restrictions."  20 CFR § 404.1527(b).  In weighing medical opinion evidence, the ALJ must consider the factors set forth in the regulations.  20 CFR § 404.1527(c).  An ALJ is not required to discuss every piece of evidence, and his failure to cite specific evidence does not mean he did not consider it.  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

The next step in the analysis of mental impairments requires a determination as to the "degree of functional limitation resulting from the impairment(s)."  20 CFR § 404.1520a(b)(2).  Rating of functional limitation evaluates the extent to which impairment "interferes with [claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  20 CFR § 404.1520a(c)(2).

"The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard." Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (referencing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)). "Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation marks and citations omitted). The court will not disturb the decision of an ALJ who seriously considers but for good reason expressly discredits a claimant's subjective complaints. See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).

Here, the ALJ concluded Mr. Dole's RFC permitted him "to perform medium work[2] except for the limitations set forth above." (AR at p. 21). The ALJ stated Mr. Dole can walk and stand for one hour at a time each; he can be on his feet with breaks for seven hours in an eight hour workday; he can sit for one hour at a time, and with breaks he can sit for at least six hours in an eight hour workday; he can lift 50 pounds occasionally and 20 pounds frequently; he can only occasionally reach overhead bilaterally and with weights that do not exceed five pounds; he would have no postural limitations; and he should avoid concentrated exposure to extreme cold and vibrations. (AR at p. 17).

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 CFR § 404.1567(c).

To arrive at this conclusion, the ALJ made a credibility determination of Mr. Dole's submissions and testimony, and considered the opinions of treating physician Dr. Trevor Anderson, the State agency physical and psychological consultants, and psychological examiner Dr. Swenson. (Id. at p. 21).

### A. Mr. Dole's Credibility

Mr. Dole contends the ALJ erred by determining Mr. Dole was not credible, specifically regarding Mr. Dole's statement to Dr. Anderson that he needed to recline for one to two hours after working on his feet for one hour. (Doc. 13 at p. 17–20; Doc. 10 at ¶ 98). For the following reasons, the court concludes the ALJ properly considered Mr. Dole's subjective complaints and discredited those complaints for good reason. Therefore, the court will defer to the ALJ's finding that Mr. Dole was not credible.

The ALJ discussed in depth Mr. Dole's medical records and contrasted that objective evidence with Mr. Dole's subjective complaints of pain and limitations. (Id. at p. 18–21). The ALJ concluded that Mr. Dole's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Id. at p. 21). However, the ALJ determined that Mr. Dole's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not supported to the extent they are inconsistent with the above residual functional capacity assessment[,]" that is, Dr. Anderson's finding that Mr. Dole could perform medium work. (Id.). The ALJ elaborated that "[t]he treatment notes, examination findings and objective diagnostic testing results simply do not support the degree of limitation that [Mr. Dole] alleges. In

15

addition, there are a number of inconsistencies which detract from [Mr. Dole's] argument that his conditions are disabling." (Id.).

In discrediting Mr. Dole's statements, the ALJ found it significant that medical records showed Mr. Dole benefitted from steroid injections, massage, and physical therapy. (Id.). Further, the majority of diagnostic evidence indicated only mild-level findings. (Id.). Mr. Dole's own treatment provider, Dr. Anderson, opined in September 2016 that Mr. Dole was capable of performing medium work. (Id.). Finally, the ALJ found Mr. Dole's behavior inconsistent with his alleged limitations: "[Mr. Dole] is certainly much more active by way of lifestyle from an individual who alleges that he cannot work due to neck pain and other limitations. The fact that [Mr. Dole] still carries out activities of daily living and leisure activities, such as mowing the lawn, fishing, hunting, cleaning, cooking, shopping, etc., suggests that [he] is less limited than he has alleged." (Id.). "In sum, the functional restrictions alleged by the claimant are disproportionate to the clinical findings in the medical evidence of record." (Id.).

After reviewing the record, the court finds no independent medical support for Mr. Dole's assertion that he needed to recline for one to two hours after working on his feet for one hour. The medical records conflict with Mr. Dole's subjective complaints. Additionally, Mr. Dole testified at the hearing that he vacuums, makes the bed, takes dishes out, and brings wood in for the fireplace every other day: he brings in two to three armloads of wood in a wheelbarrow, weighing 15–20 pounds. (Doc. 10 at § 121). The court finds that

16

the ALJ seriously considered Mr. Dole's subjective complaints, but for good reason expressly discredited those complaints. See Haggard, 175 F.3d at 594. The court therefore must defer to the ALJ's credibility determination. Schultz, 479 F.3d at 983. For these reasons, the ALJ was not required to rely on Mr. Dole's statement that he needed to recline for one to two hours after working on his feet for one hour.

### B. Dr. Anderson's Opinion

Mr. Dole additionally claims the ALJ erred by rejecting Dr. Anderson's opinion regarding Mr. Dole's need to recline, noted in a Medical Source Statement of Ability to do Work Related Activities (Physical) on September 2, 2016. (Doc. 13 at p. 13; Doc. 10 at ¶ 98). Mr. Dole argues the ALJ erred by "omit[ing] Dr. Anderson's restriction that 'after one hour of working on his feet, patient reports severe pain that is only relieved by reclining 1-2 hours." (Doc. 13 at p. 16) (emphasis omitted). Further, the ALJ did not provide any reasons for rejecting Dr. Anderson's opinions about Mr. Dole's need to recline. (Id.).

The court finds the ALJ did not err by rejecting Mr. Dole's own statement—recorded by Dr. Anderson—that he needed to recline. Contrary to Mr. Dole's argument, Dr. Anderson's note recorded Mr. Dole's own opinion about his abilities. Mr. Dole's argument is belied by the fact that in the same Statement of Ability, Dr. Anderson opined that Mr. Dole "could sit at one time for four hours and for six hours in a work day, could stand for one hour at a time and four hours during a work day, and could walk for one hour at a time or four hours in a work day." (Doc. 10 at ¶ 98). The ALJ gave great weight to

17

Dr. Anderson's opinion, stating it was "generally consistent" with Mr. Dole's RFC. (AR at p. 21). Because the ALJ properly did not find Mr. Dole credible, he was not required to accept Mr. Dole's statement to Dr. Anderson regarding his need to recline. The ALJ properly determined Mr. Dole's RFC. Mr. Dole's objection to the ALJ's RFC finding is overruled.

### **STEP FIVE**

At step five, the ALJ determines whether the claimant is able to do any other work considering his RFC, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. 20 CFR § 404.1520(a)(4)(v). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001).

The ALJ considered Mr. Dole's age, education, work experience, and residual functional capacity and determined there are jobs that exist in significant numbers in the national economy that Mr. Dole can perform. (AR at p. 22). The available jobs include working as a hand packager, a laundry worker, and a machine operator. (Id.). Therefore, the ALJ found that Mr. Dole is not disabled. (Id. at p. 23).

Mr. Dole generally objects to the ALJ's finding of no disability, arguing that "the total record convincingly establishes benefits." (Doc. 13 at p. 20). It is not the court's role to re-weigh the evidence and, even if the court would

18

decide the case differently, it cannot reverse the ALJ's decision if the decision is supported by good reason and is based on substantial evidence. <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005). Without restating the evidence of the record above, the court finds that the ALJ's decision in this case is based on substantial evidence and is supported by good reason. Mr. Dole's general objection to step five is overruled.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Doc. 13) is denied. It is further

ORDERED that the decision of the Commissioner dated February 15, 2017, is affirmed.

DATED this 30th day of March, 2019.

BY THE COURT:

_____
DANETA WOLLMANN
UNITED STATES MAGISTRATE JUDGE